114 P.3d 137

**Mario Benito CHICO–RODRIGUEZ, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 29842.

Court of Appeals of Idaho.

Feb. 16, 2005.

Review Denied June 28, 2005.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Kristina Marie Schindele, Deputy Attorney General, Boise, for respondent. Kristina Marie Schindele argued.

LANSING, Judge.

Mario Benito Chico–Rodriguez brings this appeal from the district court's dismissal of his petition for post-conviction relief. The district court concluded that the petition was untimely and that the limitation period was not tolled by virtue of Chico–Rodriguez's mental condition. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

In June 1997, Chico–Rodriguez pleaded guilty to grand theft, misdemeanor assault, burglary, and escape, all in Jerome County cases. In July 1997, the district court imposed sentences totaling three years determinate, followed by ten years indeterminate. Chico–Rodriguez did not appeal from the judgment of conviction, but he did file two motions to reduce his sentences on November 24, 1997, and September 28, 2001. Both motions were denied, and Chico–Rodriguez did not appeal.

While incarcerated in November 1998, Chico–Rodriguez battered another inmate, for which Ada County charged him with aggravated battery. Dr. Craig Beaver conducted a psychological evaluation in February 2000 to determine whether Chico–Rodriguez was competent to stand trial on that charge and determined that Chico–Rodriguez was competent. Chico–Rodriguez was convicted of aggravated battery and was sentenced on August 11, 2000 to a term of three years' incarceration.

On October 18, 2001, Chico–Rodriguez filed the instant action for post-conviction relief with regard to the Jerome County cases, and the district court appointed post-conviction counsel. The petition alleged that Chico–Rodriguez's guilty pleas were invalid because he suffered from a mental illness and because his counsel and interpreter had both rendered ineffective assistance in the Jerome County cases.[1] Chico–Rodriguez's petition also asserted that the one-year statute of limitation for filing a post-conviction

---

1.  Chico–Rodriguez alleged that it was his understanding at the time of the guilty plea that he

would receive only three years of incarceration and then be released or deported to Mexico.

action, Idaho Code § 19–4902, was tolled on account of his mental illness and his poor English skills, which were a barrier to his ability to file the post-conviction petition. The State's answer asserted that the petition was untimely under I.C. § 19–4902, and the district court issued a notice of intent to dismiss the petition as untimely. Appointed counsel for Chico–Rodriguez responded, asking that the statute of limitation be tolled because of Chico–Rodriguez's mental condition, the language barrier, his lengthy confinement in administrative segregation, and an allegedly inadequate prison legal resource program.

The district court held two evidentiary hearings to determine whether Chico–Rodriguez suffered from a mental disorder that required tolling of the statute of limitation and, if the action were not barred by the statute of limitation, whether Chico–Rodriguez was competent when he entered his guilty plea. In rendering its decision concerning Chico–Rodriguez's claim that his mental illness tolled the statute of limitation, the district court said that it was applying the competency standard articulated in *Stone v. State*, 132 Idaho 490, 975 P.2d 223 (Ct.App. 1999), for defendants facing a criminal trial. That standard is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Stone*, 132 Idaho at 492, 975 P.2d at 225. Applying that standard, the district court found that, although Chico–Rodriguez suffered from a mental disorder, it was not of such severity as to prevent him from timely filing a post-conviction action, and therefore the mental illness did not toll the statute of limitation. The court also addressed the merits of the underlying claim that the guilty plea was invalid and found that Chico–Rodriguez was not incompetent when he entered his guilty plea in the criminal action. Therefore the district court dismissed the petition both on the ground that it was untimely and on the merits. Chico–Rodriguez appeals.

## II.

## ANALYSIS

We consider first the timeliness of this action. The statute of limitation for post-conviction actions is one year from the expiration of the time for appeal in the criminal case or from the determination of the appeal or from the determination of the proceedings following an appeal, whichever is later. I.C. § 19–4902. Idaho Code § 5–230 provides that in actions other than actions for the recovery of property, the statute of limitation is tolled during periods when the plaintiff is "insane." In the post-conviction context, we have recognized that the limitation period specified in I.C. § 19–4902 may be tolled where the applicant was prevented from timely filing his action by incapacitating mental illness or the effects of psychotropic medication. *Abbott v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (Ct.App.1996).

Chico–Rodriguez argues that the district court employed the wrong competency standard in determining that the limitation period for his post-conviction action was not tolled due to mental illness. He proposes that we follow *State v. Nix*, 40 S.W.3d 459 (Tenn.2001), where the court stated that due process requires tolling of the post-conviction statute of limitation if "a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." *Nix*, 40 S.W.3d at 463.

We agree with Chico–Rodriguez that the test articulated in *Stone* for determining the competence of a criminal defendant to stand trial is not appropriate for determining whether the statute of limitation for a post-conviction action should be tolled due to mental illness. The petitioner in a post-conviction action will not necessarily be represented by counsel. *See* I.C. § 19–4904; *Charboneau v. State*, 140 Idaho 789, 102 P.3d 1108 (2004); *Brown v. State*, 135 Idaho 676, 23 P.3d 138 (2001). In fact, in the vast majority of cases, such petitions are filed pro se. Because the proceedings are brought by, rather than against, such a person, and because the petitioner will be self-represented, a competency determination cannot logically be based upon whether the petitioner under-

stands "the proceedings against him" and whether he is able to "consult with his lawyer." On the other hand, the *Nix* standard advanced by Chico–Rodriguez is equally unhelpful. Although evidence showing whether a petitioner was capable of managing his personal affairs will be relevant to whether he was competent to pursue a UPCPA action, the dispositive question is not whether the individual was able to manage his personal affairs, but whether his mental illness prevented him from complying with the statute of limitation for filing a post-conviction action.

Other courts have adopted an "extraordinary circumstances" or "rare and exceptional circumstances" standard for determining when the statute of limitation for a post-conviction or habeas corpus action is equitably tolled. *See, e.g., Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir.2003) ("Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the ... filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled."); *Nara v. Frank*, 264 F.3d 310, 320 (3rd Cir.2001) (remanding for evidentiary hearing to determine whether habeas petitioner's mental health problems constituted extraordinary circumstances to justify equitable tolling); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir.2000) (limitation period for habeas petition subject to equitable tolling only in rare and exceptional circumstances, such as uncontrollable circumstances which prevent a petitioner from timely filing, and excusable neglect is insufficient); *Smith v. McGinnis*, 208 F.3d 13, 17 (2nd Cir.2000) (in order for equitable tolling to apply, habeas petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll).

■ These cases illustrate that the bar for equitable tolling for post-conviction actions is high. It is not enough to show that compliance was simply made more difficult on account of a mental condition. We hold that in order for the statute of limitation under the UPCPA to be tolled on account of

a mental illness, an unrepresented petitioner must show that he suffered from a serious mental illness which rendered him incompetent to understand his legal right to bring an action within a year or otherwise rendered him incapable of taking necessary steps to pursue that right. Equitable tolling will apply only during the period in which the petitioner's mental illness actually prevented him from filing a post-conviction action; any period following conviction during which the petitioner fails to meet the equitable tolling criteria will count toward the limitation period.

The standard we have adopted here is expressed differently than the competency standard for criminal trials that the district court said it was applying in the proceedings below. The record establishes, however, that this distinction in the articulation of the standard is of no substantive consequence here because the district court, in fact, addressed the correct inquiries on the tolling issue. Before the first evidentiary hearing, the following colloquy took place between Chico–Rodriguez's counsel and the district court:

> THE COURT: One thing is there's degrees of mental illnesses.... *The question is causally did that prevent him from—*
>
> MR. KERSHAW: *From having a fair opportunity to file his petition in a timely fashion.*
>
> THE COURT: *Correct.* And mental illness comes and goes. He could be extremely psychotic one day and, shortly thereafter, not be psychotic at all.

Thus, although the court stated on other occasions that it would apply the competence standard utilized in determining a criminal defendant's competence to stand trial, it is clear that the district court understood that the timeliness issue turned upon whether Chico–Rodriguez's mental illness actually prevented him from timely filing his petition.

■ The next question for appellate review is whether substantial evidence supported the district court's finding that Chico–Rodriguez's mental illness did not prevent the timely filing of a post-conviction action. Just as a trial court's determination of competence to stand trial in a criminal case will be upheld if it is supported by substantial

and competent evidence, *State v. Daniel,* 127 Idaho 801, 804, 907 P.2d 119, 122 (Ct.App. 1995), a determination of competency for equitable tolling purposes in the post-conviction context is a factual finding that will not be disturbed on appeal unless it lacks support in the evidence.

The evidence before the district court included records of Chico–Rodriguez's mental health treatment in the penitentiary, written reports and live testimony from two psychologists retained by the parties as expert witnesses for purposes of the post-conviction action, and several lay witnesses who interacted with Chico–Rodriguez in 1997. This evidence showed that Chico–Rodriguez's mental illness was initially documented in August 1997 when he underwent mental health screening in prison. Prison psychiatrists diagnosed Chico–Rodriguez as suffering from schizo-affective disorder and/or bipolar disorder with psychotic features, and they prescribed various medications. Prison mental health records for the period of approximately late 1998 through 2000 consistently mentioned, however, that Chico–Rodriguez's thought processes were "linear, logical, and goal directed" and that Chico–Rodriguez was "alert and oriented to person, place, time and situation." Dr. Beaver, the psychologist who evaluated Chico–Rodriguez in February 2000 to determine his competence to stand trial in the aggravated battery case, concluded that Chico–Rodriguez probably suffered from schizophrenia, paranoid type, or alternatively bipolar disorder, manic type. As an expert witness for the State in the post-conviction action, Dr. Beaver conducted another evaluation of Chico–Rodriguez in December 2002. He concluded that the severity of Chico–Rodriguez's mental illness, and the extent to which it interfered with his functioning was "highly suspect." Dr. Beaver was of the opinion that Chico–Rodriguez was exaggerating the severity of the symptoms to make more persuasive the allegations in his post-conviction action. Dr. Beaver further opined that Chico–Rodriguez's mental illness did not prevent him from filing a petition for post-conviction relief in a timely manner. Six other witnesses who interacted with Chico–Rodriguez during the 1997 proceedings all testified that Chico–Rodriguez had not exhibited any behavior that would indicate that he was mentally ill. The witnesses included Chico–Rodriguez's former attorney, his interpreter, his former girlfriend and her mother, and two Jerome police officers who interviewed Chico–Rodriguez in connection with the 1997 case. Additionally, the district court considered the record showing that, between the time of Chico–Rodriguez's conviction and the filing of his post-conviction claim, he had been able to file two motions for reduction of his sentences, and to send letters to the Idaho Attorney General, the Immigration and Naturalization Service, and the American Civil Liberties Union. Although conflicting evidence was presented by Chico–Rodriguez, primarily through the testimony of his retained expert, there was abundant evidence to support the district court's finding that Chico–Rodriguez's mental illness did not so impair his functioning as to render him incapable of bringing a post-conviction action during the limitation period.

■ In holding that the petition was time barred, the district court implicitly rejected Chico–Rodriguez's contentions that the alleged language barrier, his confinement in administrative segregation, and an allegedly inadequate prison legal resource program, prevented Chico–Rodriguez from timely filing the petition. The evidence presented in the evidentiary hearings does not compel the conclusion that Chico–Rodriguez had proved any of those allegations by a preponderance of evidence. Dr. Beaver testified that Chico–Rodriguez had been able to communicate effectively in English. Ann Eldridge, the interpreter for the 1997 proceedings, reported that Chico–Rodriguez would often begin to answer questions that had been given in English before she had translated the question into Spanish. She did not note any difficulties with Chico–Rodriguez's ability to follow the court proceedings or to communicate and ask appropriate questions during the proceedings. The woman who was Chico–Rodriguez's girlfriend in 1997 testified that she had communicated with him almost exclusively in English. A police officer who

interviewed Chico–Rodriguez in English in the 1997 case testified that Chico–Rodriguez "communicated quite well in English." Chico–Rodriguez's placement in administrative segregation at the prison did not occur until approximately fifteen months after his conviction, when the statute of limitation for his post-conviction action had already expired. While in administrative segregation he remained capable of carrying on correspondence with various agencies as mentioned above.

We therefore conclude that the record supports the district court's determination that Chico–Rodriguez's petition for post-conviction relief was time barred, and that equitable tolling did not apply. The order dismissing Chico–Rodriguez's petition is therefore affirmed.

Judge GUTIERREZ and Judge Pro Tem STICKLEN concur.