# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50430

GUY BRACALI-GAMBINO,    )
                        )
   Petitioner-Appellant,    )
                        )    **Boise, June 2023 Term**
v.                      )
                        )    **Opinion Filed: September 11, 2023**
STATE OF IDAHO,         )
                        )    **Melanie Gagnepain, Clerk**
   Respondent.    )
                        )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant, Guy Bracali-Gambino. Sally J. Cooley argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent, State of Idaho. Kenneth K. Jorgensen argued.

_____

STEGNER, Justice.

In 2017, Guy Bracali-Gambino pleaded guilty to possession of major contraband in a correctional facility in violation of Idaho Code section 18-2510(3). On direct appeal, the Idaho Court of Appeals, in an unpublished opinion, affirmed his conviction and sentence. *State v. Bracali-Gambino*, No. 45885, 2018 WL 6616256, at *1 (Idaho Ct. App. Dec. 18, 2018). Bracali-Gambino subsequently filed a petition for post-conviction relief, asserting in relevant part that his trial counsel had coerced him into pleading guilty, provided erroneous legal advice regarding sentencing enhancements for persistent violators, and failed to investigate the prosecution's evidence. Bracali-Gambino contended, that considering these errors, his trial counsel had been ineffective. Except for a portion of one of Bracali-Gambino's claims (Claim II), the district court summarily dismissed his claims relevant to this appeal without conducting an evidentiary hearing. The district court also ultimately dismissed the one remaining claim following an evidentiary hearing.

1

Bracali-Gambino appealed the summary dismissal of his petition for post-conviction relief, which the Idaho Court of Appeals also affirmed. *Bracali-Gambino v. State*, No. 48632, 2022 WL 3909358, at *1 (Idaho Ct. App. Aug. 31, 2022). Bracali-Gambino then petitioned this Court for review, which we granted. For the reasons discussed below, we affirm the district court's dismissal of Bracali-Gambino's petition for post-conviction relief.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2016, while incarcerated in the Ada County Jail, Bracali-Gambino was charged with a violation of Idaho Code section 18-2510(3) for allegedly "grind[ing] a plastic jail-issued spoon into a sharp, pointed weapon." Section 18-2510(3) provides that "[n]o person including a prisoner, except as authorized by law or with permission of the facility head, shall knowingly . . . [p]ossess, or attempt to possess, major contraband within a correctional facility[.]" After consulting with his attorney, Bracali-Gambino pleaded guilty. He was sentenced to a term of imprisonment of not less than one year and not more than five years. On direct appeal, the Idaho Court of Appeals affirmed Bracali-Gambino's conviction and sentence. *Bracali-Gambino*, 2018 WL 6616256, at *1.

While his direct appeal was pending, Bracali-Gambino filed a *pro se* petition for post-conviction relief in district court. The district court "dismissed [his petition] without prejudice because the direct appeal was pending." On March 14, 2019, several months after the Court of Appeals issued its decision on his direct appeal, Bracali-Gambino filed a verified amended petition for post-conviction relief. This time he was represented by the Ada County Public Defender's Office. Relevant to this appeal, Bracali-Gambino asserted that his trial counsel had provided ineffective assistance by: (1) coercing Bracali-Gambino into pleading guilty (Claim II); (2) providing Bracali-Gambino with incorrect legal advice regarding the persistent violator statute, Idaho Code section 19-2514 (Claim III); and (3) failing to interview two pro-defense witnesses, Anthony Prichard[1] and Tracy Smith (Claim VI).

On December 20, 2019, the district court notified the parties that it intended to summarily dismiss Bracali-Gambino's petition in its entirety. The district court stated that Bracali-Gambino's claims were either "disproved by the record" or that he had failed to "allege a claim upon which relief [could] be granted." Bracali-Gambino filed a response that included affidavits from Prichard,

---

[1] In the amended petition, Anthony Prichard is referred to as "Anthony Barclay." However, Prichard signed his affidavit with the name "Anthony Prichard." Accordingly, we will refer to him as "Anthony Prichard," as do the parties on appeal.

Smith, and himself. The district court then dismissed all claims relevant to this appeal except for Claim II, which was dismissed only in part. The district court found that "an evidentiary hearing [was] appropriate on the portion of Claim II related to counsel's statement(s) as to the likelihood of success on appeal only." An evidentiary hearing was subsequently held on Claim II, after which the district court dismissed the remaining portion of Claim II.

Bracali-Gambino appealed the district court's dismissal of his petition for post-conviction relief. His appeal was assigned to the Idaho Court of Appeals, which affirmed the dismissal. *Bracali-Gambino,* 2022 WL 3909358, at *1. Bracali-Gambino petitioned this Court for review, which we granted.

## II.    STANDARDS OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)). This Court freely reviews the summary dismissal of a petition for post-conviction relief. *See Thumm v. State*, 165 Idaho 405, 412, 447 P.3d 853, 860 (2019).

> An application for post-conviction relief under the Uniform Post Conviction Procedure Act (UPCPA) is civil in nature. *Stuart v. State*, 136 Idaho 490, 495, 36 P.3d 1278, 1282 (2001). Like a plaintiff in a civil action, the applicant for post-conviction relief must prove by a preponderance of evidence the allegations upon which the application for post-conviction relief is based. *Grube v. State*, 134 Idaho 24, 995 P.2d 794 (2000). Unlike the complaint in an ordinary civil action, however, an application for post-conviction relief must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant. I.C. § 19–4903. The application must include affidavits, records, or other evidence supporting its allegations, or must state why such supporting evidence is not included. *Id.*

> Summary disposition of a petition for post-conviction relief is appropriate if the applicant's evidence raises no genuine issue of material fact. I.C. § 19-4906(b), (c). On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file and will liberally construe the facts and reasonable inferences in favor of the non-moving party. *Gilpin-Grubb v. State*, 138 Idaho 76, 80, 57 P.3d 787, 791 (2002), *citing LaBelle v. State*, 130 Idaho 115, 118, 937 P.2d 427, 430 (Ct. App. 1997). A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioner's conclusions.

3

*Ferrier v. State*, 135 Idaho 797, 799, 25 P.3d 110, 112 (2001). When the alleged facts, even if true, would not entitle the applicant to relief, the trial court may dismiss the application without holding an evidentiary hearing. *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990), *citing Cooper v. State*, 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975). Allegations contained in the application are insufficient for the granting of relief when (1) they are clearly disproved by the record of the original proceedings, or (2) do not justify relief as a matter of law. *Id.*

*Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007).

## III.   ANALYSIS

On appeal, Bracali-Gambino asserts that the district court erred in dismissing three of his post-conviction claims. Specifically, he argues that the district court should not have dismissed his claims that his trial counsel was ineffective for: (1) coercing him into pleading guilty; (2) providing incorrect legal advice regarding the persistent violator statute; and (3) failing to investigate two witnesses.

Relevant to the three claims at issue here, this Court "review[s] claims for ineffective assistance of counsel utilizing the two-prong test set forth in *Strickland v. Washington*[.]" *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

> To prevail on such a claim, the applicant for post-conviction relief must demonstrate (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. When evaluating an ineffective assistance of counsel claim, this Court does not second-guess strategic and tactical decisions, and such decisions cannot serve as a basis for post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review. There is a strong presumption that counsel's performance fell within the wide range of professional assistance.

*Id.* (quoting *State v. Hairston*, 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999)) (internal quotation marks and remaining citations omitted).

"This Court applies the *Strickland* test when determining whether a defendant has received ineffective assistance of counsel during the plea process." *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)). "To establish prejudice resulting from his or her attorney's performance, a defendant must show that as a result of counsel's deficient performance there is a reasonable probability that, but

4

for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial." *Savage v. State*, 170 Idaho 367, 371, 511 P.3d 249, 253 (2022) (quoting *Icanovic v. State*, 159 Idaho 524, 529, 363 P.3d 365, 370 (2015)) (bracketed language original to *Savage*, internal quotation marks omitted). "Such a defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* (internal quotation marks omitted) (quoting *Padilla*, 559 U.S. at 372).

If a defendant fails to establish either of the elements of an ineffective assistance claim under the *Strickland* test, then dismissal is appropriate. *Dunlap v. State*, 159 Idaho 280, 297, 360 P.3d 289, 306 (2015). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* Thus, if Bracali-Gambino's claims fail on either of the *Strickland* prongs, we will affirm the district court's dismissal of that claim.

We will discuss each of Bracali-Gambino's claims in turn.

### A. The district court did not err in dismissing Bracali-Gambino's claim that his trial counsel was ineffective for allegedly coercing him into pleading guilty (Claim II).

In his petition for post-conviction relief, Bracali-Gambino asserted that his trial counsel coerced him into pleading guilty by promising to "file a lawsuit against Ada County for giving Mr. Bracali-Gambino the spoon." Bracali-Gambino alleged that, "[a]s an inducement to get Mr. Bracali-Gambino to plead despite his intent on taking his case to trial, trial counsel told Mr. Bracali-Gambino that he had just won a $30 million lawsuit against the State of Idaho[.]" Bracali-Gambino's trial counsel purportedly "indicated that Mr. Bracali-Gambino also might get money from a lawsuit against the State if he pleaded." Bracali-Gambino alleged that "[h]is decision to plead guilty was only induced by false information presented to him by his trial counsel that his conviction would be overturned on appeal and that he would then have a lucrative and viable lawsuit against the State."

The district court notified Bracali-Gambino that it planned to summarily dismiss Claim II. The district court pointed out that, during his change of plea hearing, Bracali-Gambino had answered "no" when the district court asked "if he felt that he was 'being pressured or coerced into entering a guilty plea.'" Bracali-Gambino had "also indicated he understood that he was not required to accept a plea agreement, that he was not required to enter a guilty plea, that the plea agreement was acceptable to him, [and] the plea agreement on record represented the entirety of the agreement that he wanted to plead guilty." Additionally, the district court pointed out that, on

5

the guilty plea advisory form, Bracali-Gambino had "answered 'no' when asked if any other promises had been made to him to influence his decision to plead guilty." The district court concluded Bracali-Gambino's prior responses during his plea colloquy "clearly discredit[ed] his assertion that trial counsel made promises other than those included in the plea agreement."

Bracali-Gambino responded to the district court's notice of intent to dismiss, asserting that "the misadvice [sic] tendered by counsel was the primary inducement in his relinquishment of his right to trial." To support this assertion, Bracali-Gambino submitted an affidavit to the district court providing additional explanations as to his state of mind when completing the guilty plea advisory form. In his affidavit, Bracali-Gambino alleged that his decision was based on lies from his attorney:

> At that hearing where I changed my plea to guilty, I indicated that I was not being pressured or coerced into pleading guilty.
>
> That answer was based on my belief in his lies at the time.
>
> . . . .
>
> . . . When I indicated that I was confident with my attorney at the hearing, this was also based on his lies that the case would be overturned on appeal[,] and I would not be a felon.
>
> When I indicated that I was accepting the plea agreement, that the plea agreement was acceptable to me, and that the plea agreement on the record represented the entirety of the plea agreement, my decision to plead guilty was still a result of [defense counsel's] lies.

The district court subsequently dismissed the portion of Claim II regarding the civil lawsuit because Bracali-Gambino "did not respond with any argument regarding counsel's statements related to a civil lawsuit."[2]

On appeal, Bracali-Gambino argues that the district court erred in summarily dismissing the part of Claim II that dealt with his trial counsel's purported promise to file and win a civil lawsuit. Bracali-Gambino asserts that he adequately responded to the district court's notice of intent to dismiss that portion of his claim.

We hold that the district court did not err in dismissing that portion of Bracali-Gambino's Claim II that alleged his counsel had coerced him to get him to plead guilty. As stated above, "a court is required to accept the petitioner's unrebutted allegations as true, but need not accept the

---

[2] The portion of Claim II regarding the likelihood of Bracali-Gambino's success on direct appeal received an evidentiary hearing, but ultimately resulted in a dismissal. Bracali-Gambino does not challenge the district court's dismissal of the portion of Claim II regarding his success on direct appeal.

6

petitioner's conclusions." *Ferrier*, 135 Idaho at 799, 25 P.3d at 112. Here, Bracali-Gambino relies solely on allegations that explicitly contradict his statements to the trial court when he pleaded guilty. Such conclusory allegations are unable to overcome the sworn statements he made at the time of tendering his plea of guilty. *See Hernandez v. State*, 171 Idaho 663, 668–69, 525 P.3d 318, 323–24 (2023) (holding that Hernandez failed to overcome the significant presumption of the truthfulness of his sworn statements to the district court because "Hernandez's conclusory allegations in his post-conviction petition are insufficient considering the weight which must be given to his earlier statements"). Because Bracali-Gambino has not overcome the rebuttable presumption that his sworn statements were correct, he has failed to prove his counsel's conduct fell below an objective standard of reasonableness. Accordingly, we hold that the district court correctly dismissed the challenged portion of Claim II.

**B. The district court did not err in dismissing Bracali-Gambino's claim that his trial counsel had been ineffective for providing incorrect legal advice regarding the persistent violator statute (Claim III).**

In his petition for post-conviction relief, Bracali-Gambino asserted that he told his trial counsel that he was concerned about the persistent violator sentencing enhancement. Bracali-Gambino "explained that he was concerned that in [sic] if he pled guilty to a felony and got felonies in the future, he would face the possibility of getting life in prison." Bracali-Gambino's trial counsel purportedly explained that was not a possibility because the persistent violator enhancement only applied if Bracali-Gambino were convicted of three felonies for the same crime. Trial counsel purportedly "stated, 'what are the odds of you being in a jail and sharpening a spoon again[,]' or words to that effect." Bracali-Gambino asserted that "[t]his advice was material" to his decision to plead guilty rather than go to trial.

The district court notified Bracali-Gambino that it planned to dismiss Claim III. The district court concluded dismissal of the claim was appropriate for three reasons:

(1) the persistent violator statute was not applicable to the sentence in this case; (2) the [c]ourt cured any misinformation as part of the guilty plea hearing and/or materials; and (3) Petitioner failed to show he would not have plead [sic] guilty had he known that the persistent violator statute will apply to any third or subsequent felony conviction, regardless of whether the convictions were for the same crime.

In response, Bracali-Gambino argued that his trial counsel had the duty to provide legally correct advice under this Court's decision in *Booth*. Bracali-Gambino also maintained that his trial counsel's failure to do so was not remedied by the guilty plea advisory form. Bracali-Gambino

7

asserted that "[t]his issue was important to [him] and had he not be[en] misinformed of how that statute operates, he would not have pled guilty." In his supporting affidavit, Bracali-Gambino stated that he "believe[d] that when [his counsel] realized that the Persistent Violator was a deal breaker for me and I wanted to go to trial, he mislead [sic] me as to how the statute worked to get me to plead guilty."

The district court ultimately dismissed Claim III without conducting an evidentiary hearing. The district court explained that, even if the guilty plea advisory form had not cured Bracali-Gambino's counsel's failure to explain a potential penalty to Bracali-Gambino, he had not provided "more than a mere conclusory statement that [he] was concerned about committing future felonies[.]" Accordingly, the district court dismissed Claim III.

On appeal, Bracali-Gambino argues he explained to the district court he was concerned about "the degree of risk" of eventually being subject to the persistent violator enhancement. He asserts that, while his trial counsel may not have had a duty to inform him of potential collateral consequences, counsel had a duty to give Bracali-Gambino accurate legal advice. Bracali-Gambino explains his claim "was *not* that [defense counsel] failed to advise Mr. Bracali-Gambino of a collateral consequence. Instead, counsel *affirmatively misadvised* [sic] Mr. Bracali-Gambino" regarding the persistent violator enhancement. (Italics in original.)

We hold that Bracali-Gambino has not shown that his counsel's advice prejudiced him. The district court correctly concluded that Bracali-Gambino failed to put forth sufficient facts in his affidavit to show that he would have insisted upon going to trial but for his counsel's erroneous explanation of how the persistent violator enhancement applied. Bracali-Gambino alleged that he "was very concerned" about the persistent violator enhancement and that it was a "deal breaker" for him. However, he did not explain—either below or on appeal—*why* he was so concerned about the persistent violator enhancement. Without more information, it is impossible to determine the effects of his counsel's purportedly erroneous advice on Bracali-Gambino's decision whether to plead guilty. In short, Bracali-Gambino has not shown "there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial." *See Savage*, 170 Idaho at 371, 511 P.3d at 253 (quoting *Icanovic* 159 Idaho at 529, 363 P.3d at 370) (bracketed language original to *Savage*, internal quotation marks omitted).

Accordingly, we hold that the district court correctly dismissed Claim III without conducting an evidentiary hearing.

**C. The district court did not err in dismissing Bracali-Gambino's claim that his trial counsel had been ineffective for failing to investigate Prichard and Smith (Claim VI).**

In his petition for post-conviction relief, Bracali-Gambino asserted that his counsel had failed to interview two witnesses, Prichard and Smith, despite Bracali-Gambino informing his counsel that they might provide helpful testimony. Prichard and Smith were "inmate workers at the jail during the period of time Mr. Bracali-Gambino was in custody." Bracali-Gambino alleged that Prichard and Smith "would have testified that they frequently got sharpened spoons and they were not taken out of circulation and were put back into the bed rolls." According to Bracali-Gambino, "[t]hese witnesses would have provided evidence [for] a defense that the spoon possessed by Mr. Bracali-Gambino was not altered [by him] and was provided to Mr. Bracali-Gambino by the jail." Bracali-Gambino asserted that, had his counsel investigated Prichard and Smith, he "would not have pled guilty and would have taken his case to trial."

The district court notified Bracali-Gambino it intended to dismiss Claim VI because he had "merely provided conclusory statements as to what [the witnesses'] testimony would have been" instead of including affidavits from Prichard and Smith. In response, Bracali-Gambino submitted affidavits from both Prichard and Smith, in which they asserted that sharpened spoons were regularly found in the jail kitchen and not removed from circulation. Bracali-Gambino also submitted an affidavit, in which he asserted that he told his counsel about Prichard specifically.

The district court ultimately dismissed Claim VI without conducting an evidentiary hearing. The district court reasoned that Prichard's and Smith's affidavits did "not provide a basis for any personal knowledge of either witness that testifies specifically about the spoon that Petitioner possessed . . . only that sharpened plastic spoons circulated at the jail during the time Petitioner was incarcerated." The district court further explained that Bracali-Gambino's mere possession of the spoon was not the issue in his criminal case; rather, "the attempted sharpening [of the spoon by Bracali-Gambino] was the criminal violation for which Petitioner was charged, pled guilty, and ultimately sentenced." The district court then dismissed Claim VI.

On appeal, Bracali-Gambino argues that the district court erred in dismissing Claim VI. He asserts that Prichard and Smith "were prepared to testify that already sharpened spoons were in regular circulation within the jail, and thus Mr. Bracali-Gambino's possession of a spoon with a roughened handle would not necessarily constitute guilt of possession of contraband[.]" Bracali-Gambino argues that "[i]t is highly likely defense counsel would have encouraged

9

Mr. Bracali-Gambino to proceed to trial on such a weak case, in light of the witnesses who planned to testify regarding the circulation of altered spoons within the jail." He maintains he was entitled to an evidentiary hearing on Claim VI.

We hold that the district court did not err in dismissing Claim VI. Bracali-Gambino focuses solely on his argument that the testimony of Prichard and Smith would have rebutted the State's evidence that the sharpened spoon was "major contraband." However, Bracali-Gambino did not explain below, nor does he on appeal, *how* Prichard's and Smith's potential testimony would have rebutted the State's evidence that he was witnessed sharpening the spoon in question and, in doing so, attempted to possess major contraband. As noted by the district court, even if the spoon had already been somewhat sharpened when it was in circulation at the jail, Bracali-Gambino's attempt to make that spoon sharper is still a violation of the statute. *See* I.C. § 18-2510(3)(c) ("No person including a prisoner, except by law or with permission of the facility head, shall knowingly: . . . (c) Possess, *or attempt to possess*, major contraband within a correctional facility[.]" (italics added)). In the criminal complaint filed against Bracali-Gambino, the State specifically alleged that Bracali-Gambino "did knowingly and unlawfully possess, *or attempt to possess*, major contraband to-wit: a shank or dangerous weapon[.]" (Italics added.)

During the plea colloquy, the district court questioned Bracali-Gambino at length regarding whether he had attempted to sharpen the spoon. Bracali-Gambino admitted multiple times and in multiple ways that he had tried to sharpen the spoon against the floor in his cell, albeit unsuccessfully. He stated, "*I had the intent*, but nothing was happening. It was like plastic on plastic." (Italics added.) Bracali-Gambino also misperceives the role of counsel in advising him. As noted in his affidavit, Bracali-Gambino wrote: "It is highly likely defense counsel would have encouraged Mr. Bracali-Gambino to proceed to trial on such a weak case[.]" It is not defense counsel's duty to "encourage" a defendant to plead not guilty and proceed to trial. Rather, effective assistance of counsel is to advise his client of the pros and cons of various options so that a defendant may make a knowing, intelligent, and voluntary decision regarding whether to plead guilty.

In addition, Bracali-Gambino fails to explain how Prichard's and Smith's testimony would have negated the State's evidence that Bracali-Gambino had attempted to sharpen the spoon. They simply could not have done so: Prichard and Smith could only have testified that sharpened spoons were in circulation at the jail. They have no personal knowledge as to whether Bracali-Gambino

10

attempted to further sharpen the spoon in his possession. Thus, even if Bracali-Gambino's counsel had investigated Prichard and Smith, we are unconvinced his counsel would have recommended Bracali-Gambino go to trial. Accordingly, Bracali-Gambino has not overcome his burden to show that "there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial." *See Savage*, 170 Idaho at 371, 511 P.3d at 253 (quoting *Icanovic* 159 Idaho at 529, 363 P.3d at 370) (bracketed language original to *Savage*, internal quotation marks omitted).

Therefore, we hold that the district court did not err in dismissing Claim VI without conducting an evidentiary hearing.

## IV.    CONCLUSION

In sum, we affirm the district court's dismissal of Bracali-Gambino's petition for post-conviction relief. Claim II fails because Bracali-Gambino specifically disclaimed, while under oath at his change of plea hearing, that anyone (which included his defense counsel) had coerced or pressured him into pleading guilty. Claim III fails because Bracali-Gambino's conclusory allegations were not sufficient to show that he was prejudiced by the purported erroneous legal advice. Finally, Claim VI fails because Bracali-Gambino has not provided a sufficient explanation as to how Prichard's and Smith's testimony would have contradicted the State's evidence that he attempted to possess major contraband. For these reasons, we affirm the district court's dismissal of Bracali-Gambino's petition for post-conviction relief.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

11